UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-24295-CV-ALTMAN/REID

JUAN CARLOS GIL,

    Plaintiff,

v.

REY BERMUDEZ AS TRUSTEE OF
THE REY BERMUDEZ REVOCABLE
TRUST DATED AUGUST 22, 2006,
and MEI HOUSE CORP,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON JOINT MOTION FOR APPROVAL AND ENTRY OF CONSENT DECREE AND TO DISMISS ACTION WITH PREJUDICE**

    This matter is before the Court pursuant to the parties' Joint Motion for Approval and Entry of Consent Decree and to Dismiss Action with Prejudice. [ECF No. 29]. The Motion has been referred to the Undersigned for a Report and Recommendation. *See* [ECF No. 33]. The Court has carefully considered the Joint Motion, the record in this case, the applicable law, and the oral arguments of the parties heard on June 28, 2022, and is fully advised. For the reasons discussed below, this Court **RECOMMENDS** that the Motion be **GRANTED,** and this action be **DISMISSED** with prejudice.

    **I.**    **Background**

    Plaintiff Juan Carlos Gil filed the instant action alleging that Defendants violated the Americans with Disabilities Act (the "ADA") by failing to make their commercial property located at 7397 W. Flagler Street, Miami, Florida (the "Commercial Property") accessible. [ECF No. 1]. More specifically, Plaintiff alleges that he is an individual with disabilities, as defined by the ADA, and that he "regularly frequent[s]" the Commercial Property and the adjoining parking lot. [*Id.* at

3-4]. He further claims that upon visiting the Commercial Property on August 25, 2021, the (1) parking lot and accessible route; (2) entrance access and path of travel; (3) access to goods and services; and (4) restrooms were non-compliant with the ADA. [*Id*. at 3-9]. According to Plaintiff, this lack of compliance "directly affected his ability to use and enjoy the Commercial Property and businesses located therein." [*Id*. at 3].

Plaintiff sought (1) a declaratory judgment finding Defendants in violation of Title III of the ADA; (2) an order requiring an ADA compliance inspection of the Commercial Property and allowing him to be present at the inspection; (3) injunctive relief including an order requiring Defendants to make the Commercial Property readily accessible and usable by individuals with disabilities as required by the ADA; and (4) an award of attorney's fees.

Ultimately, the parties engaged in an informal settlement conference [ECF No. 18], settled the case [ECF No. 19], and filed the instant Motion attaching their Consent Decree. [ECF No. 29]. Then, on June 28, 2022, this Court held a hearing to determine whether the parties' Consent Decree was fair, reasonable, lawful, and not contrary to public policy.

## II.     Legal Standard

"In considering whether to enter a proposed consent decree, courts should be guided by the general principle that settlements are encouraged." *Poschmann v. Lauderdale Boutique Hotel, LLC*, No. 20-14198-CIV, 2020 WL 6785336, at *1 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted sub nom. Pschmann v. Lauderdale Boutique Hotel, LLC*, No. 20-14198-CIV, 2020 WL 6781788 (S.D. Fla. Nov. 18, 2020) (citing *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999)). Prior to entering a consent decree, however, a "court must satisfy itself that the agreement is fair, reasonable, lawful, and not contrary to public policy." *Id*. (citing *Stovall v. City of Cocoa*, Fla., 117 F.3d 1238, 1240, 1244 (11th Cir. 1997); *United States v. City of Hialeah*, 140 F.3d 968, 973 (11th Cir. 1998)). Finally, a consent decree must be considered and

adopted or rejected in whole. *Id*. (citing *United States v. DeKalb Cty., Ga.*, No. 1:10-CV-4039-WSD, 2011 WL 6402203, at *9 (N.D. Ga. Dec. 20, 2011)).

### A. Lawfulness

Chapter 36 of Title 28 of the Code of Federal Regulations

> implement[s] subtitle A of title III of the Americans with Disabilities Act of 1990 (42 U.S.C. 12181–12189), as amended by the ADA Amendments Act of 2008 (ADA Amendments Act) (Pub.L. 110–325, 122 Stat. 3553 (2008)), which prohibits discrimination on the basis of disability by covered public accommodations and ***requires places of public accommodation and commercial facilities to be designed, constructed, and altered in compliance with the accessibility standards established by this part***.

28 C.F.R. § 36.101.

The requirements regarding commercial facilities are set forth in subsection D. *See* 28 C.F.R. § 36.102 ("(c) Commercial facilities. The requirements of this part applicable to commercial facilities are set forth in subpart D of this part"). Subsection D states the rule for alterations of commercial properties as follows:

> (a) General.
>
>> (1) **Any alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs**.
>>
>> (2) An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.
>
> (b) Alteration. For the purposes of this part, **an alteration is a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof**.
>
>> (1) Alterations include, but are not limited to, **remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions**. Normal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical and electrical systems are not alterations unless they affect the usability of the building or facility.

…

28 C.F.R. § 36.402 (emphasis added).

Moreover, under Subsection D the rule regarding the alteration of a path of travel is as follows:

> (a) General.
>
>> (1) An alteration that affects or could affect the **usability of or access to** an area of a facility that contains a primary function **shall be made so as to ensure that, to the maximum extent feasible, the path of travel to the altered area and the restrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs**, unless the cost and scope of such alterations is disproportionate to the cost of the overall alteration.
>
> …
>
> (b) Primary function. A "primary function" is a major activity for which the facility is intended. Areas that contain a primary function include, but are not limited to, the customer services lobby of a bank, the dining area of a cafeteria, the meeting rooms in a conference center, as well as offices and other work areas in which the activities of the public accommodation or other private entity using the facility are carried out. Mechanical rooms, boiler rooms, supply storage rooms, employee lounges or locker rooms, janitorial closets, entrances, corridors, and restrooms are not areas containing a primary function.
>
> (c) Alterations to an area containing a primary function.
>
>> **(1) Alterations that affect the usability of or access to an area containing a primary function include, but are not limited to—**
>>
>>> **(i) Remodeling merchandise display areas or employee work areas in a department store;**
>>>
>>> **(ii) Replacing an inaccessible floor surface in the customer service or employee work areas of a bank;**
>>>
>>> **(iii) Redesigning the assembly line area of a factory; or**
>>>
>>> **(iv) Installing a computer center in an accounting firm.**

28 C.F.R. § 36.403 (emphasis added).

At the June 28, 2022, hearing, the parties represented to the court that they had conducted an ADA compliance inspection of the Commercial Property with an expert who then generated a report listing the specific alterations necessary to bring the Commercial Property into compliance. The parties' joint agreement, made with the advice of an expert in ADA compliance, satisfies the

4

requirement that modifications comply with the requirements in 28 C.F.R. § 36.402 and 28 C.F.R. § 36.403. Thus, the consent decree is lawful.

### B. Fairness and Adequacy

In considering the fairness and adequacy of a consent decree, a court must evaluate the strength of plaintiff's case by considering "'the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement.'" *Poschmann*, 2020 WL 6785336, at *3 (quoting *North Carolina*, 180 F.3d at 581). Moreover, "[a] consent decree is fair when it is the product of good-faith negotiations, reflects the opinions of experienced counsel, and takes into account the possible risks involved in litigation if the settlement is not approved." *Id.* (citing *United States v. Georgia–Pacific Corp.*, 960 F. Supp. 298, 299 (N.D. Ga. 1996)).

The Consent Decree is both fair and adequate. This case was filed on December 9, 2021, and the parties filed their notice of settlement on February 11, 2022—far before the June 3, 2022, discovery deadline. Accordingly, not much discovery took place prior to settlement, which occurred at an early stage in the proceedings. At the June 28, 2022, hearing, however, the parties stipulated that there was sufficient discovery in the case and that they were satisfied with the resolution they reached. This is a sensible conclusion because the issue—whether the Commercial Property was in compliance with ADA standards—was relatively simple and did not require much discovery outside of an inspection of the premises. Indeed, one of Plaintiff's requests for relief was for such an inspection to occur in his presence. As noted, the parties and an expert conducted an inspection and determined what alterations Defendants need to make to bring the Commercial Property in compliance.

Further, the Court is satisfied that the Consent Decree is a product of good-faith negotiations and reflects the opinions of experienced counsel and an expert in the field of ADA compliance who have taken into account the possible risks involved in litigation if the settlement is not approved. Indeed, counsel for the parties indicated that the Consent Decree is fair and beneficial to both parties and that the parties worked together to come to a desirable resolution of the issues addressed in Plaintiff's complaint.

The Court finds that the Consent Decree is fair and adequate.

### C. Public Policy Concerns

Finally, the court finds that the Consent Decree is not contrary to public policy. First, the Consent Decree is fair to and positively impacts the third parties that will be affected by it, namely other disabled individuals in the community. *See Poschmann*, 2020 WL 6785336, at *4. Second, the Consent Decree furthers the purpose of Subchapter III of the ADA, which is to prevent discrimination "against or on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182. Thus, the Consent Decree is not offensive to public policy.

### III.   Recommendations

Having found that the Consent Decree is lawful, fair and adequate, and not against public policy, this Court **RECOMMENDS** that the parties' Joint Motion for Approval and Entry of Consent Decree and to Dismiss Action with Prejudice [ECF No. 29] be **GRANTED** and this action be **DISMISSED** with prejudice.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District

Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** this 30th day of June, 2022.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Roy K. Altman**
       **All Counsel of Record via CM/ECF**